JEAN B. THIBEAULT, JUNIOR, *vs.* CITY OF NEW BEDFORD & others.

Bristol. March 7, 1961. — May 3, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Civil Service. Police. Proximate Cause. Practice, Civil,* Findings by judge.

In an action heard without jury in which the evidence was not included in the record and it did not expressly appear that a conclusion by the trial judge was intended as one based on the subsidiary facts found, the conclusion imported a determination of every fact necessary to sustain it which was not expressly negatived. [555]

G. L. c. 31, § 20D, prescribing a "probationary period of six months" following a civil service appointment during which the appointee must have "actually performed the duties of the office or position," contemplates six months of active duty, not necessarily performed within the six calendar months following the appointment. [556]

Where a civil service appointee was on active duty for four months after his appointment and then was injured and was incapacitated for the following four and one-half months, a written notice of discharge given him by the appointing authority a few days before he was ready to return to duty at the end of the four and one-half months was given "prior to the end" of the six months' probationary period of active duty following appointment required by G. L. c. 31, § 20D, and was timely thereunder. [556–557]

G. L. c. 41, § 111F, providing for the granting of a leave of absence without loss of pay for a period of incapacity for duty suffered by a police

officer because of an injury sustained in the performance of his duty, applied to one appointed a police officer of a city who was injured and incapacitated within the probationary period prescribed by c. 31, § 20D, so that the effect of a written notice of discharge seasonably given him after his injury by the appointing authority under § 20D was suspended until his incapacity and leave of absence ended and he was entitled to be paid until then, but the notice then became effective to terminate his employment.   [557]

A written notice of discharge given by the appointing authority to a civil service appointee under G. L. c. 31, § 20D, for the stated reason that within the probationary period he "suffered a heart attack and . . . [had] not reported back for work since" sufficiently specified a particular in which the appointee's "capacity" was "not satisfactory to the appointing authority" within § 20D, and the heart attack, although it was an injury sustained in the performance of the appointee's duties, was an adequate reason for the discharge.   [558]

A written notice of discharge seasonably given by the appointing authority to a civil service appointee during his probationary period was valid under G. L. c. 31, § 20D, notwithstanding failure of the appointing authority to "send a copy of such notice" to the director of civil service. [558]


PETITION for a writ of mandamus filed in the Superior Court on November 18, 1957.

The case was heard by *Coddaire*, J.

*William B. Perry, Jr.*, Assistant City Solicitor, (*Bernard Kestenbaum* with him,) for the respondent.

*George A. Cataldo*, for the petitioner.

WHITTEMORE, J.   The order in the Superior Court was that a writ of mandamus issue directing the mayor and the acting chief of police of New Bedford to reinstate the petitioner as a patrolman in the police department and that he be considered as having served so much of his probationary period under G. L. c. 31, § 20D, as is represented by the period of time from May 28, 1956,[1] to September 26, 1956,[1] inclusive, that the petitioner be granted leave without loss of pay from November 4, 1956, to February 12, 1957, and that he be restored to his membership in the city's retirement system.

The mayor, the acting chief (hereinafter the chief), and the city, as respondents, claimed exception to the denial of

---

[1] The context shows that the dates 1957 in the ''order for decree'' (properly ''order for judgment'') are inadvertent errors.

requests for rulings. The issues presented are of law only. *Andrews* v. *Board of Registrars of Voters of Easton*, 246 Mass. 572, 576–577. Compare the appeal, with equity procedure, under G. L. c. 213, § 1D; *Murtagh* v. *Registrars of Voters of Peabody*, 340 Mass. 737.

The bill of exceptions does not summarize any evidence. It contains the judge's "Finding of Facts, Rulings of Law and Order for Decree" and incorporates exhibits. The judge found as follows: On May 28, 1956, the petitioner qualified as a police officer and began his duties as a patrolman; on September 26, 1956, while on duty patroling his beat he suffered chest pain and "was distressed" until the end of his tour; during the evening he had assisted in ambulance duties, "involving heavy lifting"; he experienced sharp pains when he climbed stairs on his return home and he awoke with "belching pains" the next morning. He saw a doctor on September 27; an electrocardiograph on September 28 confirmed a diagnosis of coronary insufficiency; he was taken to the hospital and remained there twenty-six days; he was on vacation and sick leave, and was paid through November 3, 1956; from November 4 to February 7, 1957, his name remained on the police roster; on January 31, 1957, a police sergeant called on the petitioner and learned that he was to take a physical examination around February 6, 1957, and if he passed he would be able to return to light work; by letter of February 9,[1] the chief notified the petitioner that since he had not satisfactorily completed his six months' probationary period he had been "discontinued as a member of this department and . . . [his] name was accordingly taken off the payrolls"; on February 11, 1957, the petitioner by letter of

[1] "This is to notify you that inasmuch as you did not satisfactorily complete your 6-month probationary period as a patrolman in this department, you were discontinued as a member of this department, and your name was accordingly taken off the payrolls.

"Our records show that you were appointed a patrolman May 27, 1956 and reported for duty first on June 10th of the same year and, within six months, to wit, on September 28, 1956 suffered a heart attack and you have not reported back for work since.

"You are therefore requested to turn in the police equipment issued to you by this department, forthwith."

his attorney[1] notified the chief he was ready to return to light duty.

Concluding findings and rulings, which appear ahead of the order that the writ issue, are as follows: "I find that Thibeault sustained injury in the performance of his duty without fault of his own on September 26, 1956. I find that Thibeault's probationary period of six months had not expired at the time of the notice from the acting chief of police dated February 9, 1957. I find that a copy of such notice was not sent to the director in accordance with G. L. c. 31, § 20D. I find that the physical disability on the part of the petitioner halted temporarily the running of the probationary period."

The bill states the agreement of the parties that the petitioner on May 3, 1957, demanded of the mayor that he be reinstated as a police officer and the refusal of the demand.

Although the judge's decision impliedly suggests that the conclusion that the petitioner sustained injury in the performance of his duty may be intended as a conclusion on the subsidiary facts found, this does not expressly appear. The rule applies that the decision imports a finding of every fact necessary to sustain it which is not expressly negatived. *Matter of Loeb,* 315 Mass. 191, 196. *M. DeMatteo Constr. Co.* v. *Commonwealth,* 338 Mass. 568, 572. See *Stowell* v. *H. P. Hood & Sons, Inc.* 228 Mass. 555, 556–557; *Commonwealth* v. *Hogan,* 341 Mass. 372, 374. It is not significant, therefore, that the detailed findings in respect of the heart attack, in the absence of expert testimony, appear insufficient to support a conclusion that there was a

---

[1] "This will inform you that Patrolman Jean Thibeault, Jr. has this day conferred with me with reference to your letter of February 9, 1957 notifying him that his name had been taken off the payroll, and requesting the return of the police equipment issued by your department, giving as reasons for said action and request on your part that Patrolman Thibeault suffered a heart attack before the expiration of six months from the date he was appointed.

"You will please take notice that Patrolman Jean B. Thibeault, Jr. takes exception to your action and request, and hereby files his protest to the action taken against him and saves his rights in accordance with the provisions of law.

"And further, Patrolman Thibeault hereby submits that he is now ready to return to light duty in the Police Department upon the advice and direction of his doctor, and is now at your disposal, awaiting your orders. . . ."

service connected injury (*Vartanian* v. *Berman,* 311 Mass. 249, 253; *LeBlanc's Case,* 334 Mass. 265, 267; *Sevigny's Case,* 337 Mass. 747, 749; *Berardi* v. *Menicks,* 340 Mass. 396, 401), or that an exhibit tends to show the absence of a basis for such a conclusion.[1] Other evidence may have afforded support for the finding.

At issue therefore are the status and rights of a probationary patrolman, injured in the course of his duties.

General Laws c. 31, § 20D, provides, with exceptions not relevant, that "no person appointed in the official or labor service shall be regarded as holding office or employment therein until after he has *actually performed the duties of the office or position* for a probationary period of six months [emphasis supplied]. . . . If the conduct or capacity of a person serving a probationary period under an appointment in the official service or labor service, or the character or quality of the work performed by him, is not satisfactory to the appointing authority, he may, at any time after such person has served thirty days and prior to the end of such probationary period, give such person a written notice to that effect, stating in detail the particulars wherein his conduct or capacity or the character or quality of his work is not satisfactory, whereupon his service shall terminate. The appointing authority shall at the same time send a copy of such notice to the director. In default of such a notice, the appointment of such person shall become permanent upon the termination of such period."

We hold that the probationary period under G. L. c. 31, § 20D, is a six months' period of active duty. See *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372, 376. It follows that February 9, 1957, was before "the end of

---

[1] The exhibit is a letter from the attending physician dated October 25, 1956, addressed "To whom it may concern." It includes the statements "He [the petitioner] claimed that while he was walking his beat he felt that pain. It was windy and he could feel the cold air on his face. The moment he stopped the pain disappeared, when he started to walk again the pain returned. . . . Any person of that age can have a sudden myocardial infarctus just like Mr. Thibeault had and nobody knows why. It is not common but it happens." No presumption aided the petitioner such as is applicable in the case of heart injuries to permanent members of the force under G. L. c. 32, § 94.

such probationary period" and that the notice of termination under § 20D was timely under the express requirements of that section.

As the petitioner when injured was "a police officer," G. L. c. 41, § 111F, applied to him. That section provides that "Whenever a police officer . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer . . . has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers . . . determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer . . . ."

Notice under G. L. c. 31, § 20D, of termination of employment cannot cut off an accrued right to a leave of absence with pay under G. L. c. 41, § 111F. See *Yates* v. *Salem, ante,* 460. The effect of such a notice given during a leave of absence period is therefore suspended until the end of that period. Similarly a notice given under c. 31, § 20D, during a period of service connected incapacity cannot bar timely application for such disability retirement allowances, if any, as the officer would otherwise be entitled to because of the service connected injury. *Gannon* v. *Contributory Retirement Appeal Bd.* 338 Mass. 628, 633. See G. L. c. 32, §§ 7, 83, 83A, 84; *Caswell* v. *Somerville Retirement Sys.* 306 Mass. 373.

It is established by the order for judgment and the findings that the petitioner's disability so far as determinable at the time of the findings was at an end at least by February 12, 1957. The notice of February 9 was therefore effective to terminate the petitioner's employment as of February 12, if in other respects it complied with the statute. See *Carey* v. *Casey,* 245 Mass. 12.

The notice in effect asserted two grounds: (1) the failure to complete the six months' probationary period and (2) the heart attack and the consequent absence from work. This second ground was, we think, a sufficient specification of a particular in which the petitioner's "capacity" was "not satisfactory to the appointing authority." That technical precision is not required in such notices is indicated in *Sullivan* v. *Municipal Court of Roxbury Dist.* 322 Mass. 566, 577. We hold also that the injury sustained in the course of employment could be relied on as the required specification. As stated, the notice does not cut off compensatory rights given by other statutory provisions. The experience within the probationary period showed that the petitioner was subject to injury of the kind sustained. The chief was not obliged to find that a person so subject was a satisfactory person for permanent employment. See *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372, 376; *Vigoda* v. *Barton,* 338 Mass. 302, 303–304.

The validity of the notice under § 20D is not made conditional upon the copy being sent to the director of civil service. See *Ferrante* v. *Higgiston,* 296 Mass. 208, 209. The mandate is to send a "copy of such notice to the director." It is in "default of *such* a notice" (emphasis supplied), that is, the termination notice to the employee, that the appointment becomes permanent.

The respondents' request No. 6 should have been given: "Notice dated February 9, 1957, to the petitioner by the city . . . terminated his service."

The right of a former probationer to apply for retirement after discharge because of a disability which is causally related to an injury or hazard sustained during the probationary period but which first becomes manifest or which reappears after discharge is not in issue. See *Gannon* v. *Contributory Retirement Appeal Bd.* 338 Mass. 628. As to the petitioner's status in this respect it is to be noted that at least until the order below which directed his reinstatement he was affirming fitness for duty.

The respondents' exceptions are sustained. The writ is

to issue, however, for the limited purpose of ordering that the city's records show the petitioner to have been on leave of absence with pay from November 4, 1956, to February 12, 1957, and that the petitioner be paid for this period, with interest at the rate of six per cent a year from the respective payroll dates.

*So ordered.*