DAVID K. JONES *vs.* TOWN OF WAYLAND.[1]

Middlesex. April 7, 1977. — January 18, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Police,* Incapacity, Resignation, Municipality's liability. *Practice, Civil,* Appeal, Costs. *Damages,* For tort. *Words,* "Police officer."

Subsidiary findings made by a master who was not directed to report the evidence are open to attack only on the basis that they are clearly erroneous. [254-255]

Where subsidiary findings are reported by a master, both the trial judge and the appellate court are obligated to draw their own inferences from the findings. [255]

The provisions of G. L. c. 41, § 111F, were applicable to a "special" police officer appointed to a six-month term of employment. [255-257]

In an action seeking compensation under the provisions of G. L. c. 41, § 111F, evidence was sufficient to support findings that the plaintiff was "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own" and that the physician appointed by the board of selectmen to examine police officers injured while discharging their functions did not make a determination that "such incapacity no longer exists." [257-259]

A police officer's resignation, upon its acceptance by a town's board of selectmen, terminated his right to payments under G. L. c. 41, § 111F. [259-261]

In an action by a police officer to recover payments due him under the provisions of G. L. c. 41, § 111F, the judge erred in refusing to reduce

_____

[1] The board of selectmen, the accountant, and the treasurer of the town of Wayland were also named as defendants. However, only the town of Wayland appeared before this court.

the defendant's liability by the amount paid to the officer for lost wages under an insurance policy. [261-263]

BILL IN EQUITY filed in the Superior Court on March 22, 1972.

The suit was heard by *John P. Sullivan*, J., on a master's report.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert S. Wolfe* for the plaintiff.

*C. Peter R. Gossels* for the defendant.

ABRAMS, J. The plaintiff, David K. Jones (Jones), brought an action pursuant to G. L. c. 231A, § 1, seeking a declaration that he is entitled to compensation from the defendant town of Wayland (Wayland), under G. L. c. 41, § 111F, as appearing in St. 1964, c. 149,[2] as a police officer "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own."

As ordered by a judge of the Superior Court, hearings were held before a master. The order of reference to the master did not require him to report evidence except as necessary for consideration of questions of law. The master con-

[2] "Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, or a police officer or fire fighter assigned to special duty by his superior officer, whether or not he is paid for such special duty by the city or town, is so incapacitated because of injuries so sustained, he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter. This section shall also apply to any member of a fire department who is subject to the provisions of chapter one hundred and fifty-two if he is injured at a fire and if he waives the provisions of said chapter."

cluded that the plaintiff was entitled to recover compensation under the statute from the date of his injury to the date of the expiration of his appointment. On September 24, 1973, the plaintiff moved to confirm the master's report and for entry of a final decree. The defendant then filed its objections to the master's report as required by former Rule 90 of the Superior Court and moved for recommittal to the master for the purpose of furnishing an "accurate and fair summary of so much of the evidence as shall be necessary to enable the Court to determine the questions of law [raised by the defendant's objections]." The motion was allowed, and the report of the master on recommittal was filed on December 3, 1973. On January 10, 1975, the Superior Court judge filed an opinion based on his adoption of the master's subsidiary findings and on additional evidence presented in the Superior Court. On March 20, 1975, he declared the rights of the parties and ordered the entry of judgment for the plaintiff. The defendant noted its appeal on March 28, 1975.

On December 28, 1976, the Appeals Court reversed the judgment of the Superior Court judge and ordered the cause remanded "for a redetermination of the net amount of the town's liability (if any) to the plaintiff." *Jones* v. *Wayland*, 4 Mass. App. Ct. 725, 737 (1976). We granted the plaintiff's application for further appellate review. Since we are in substantial agreement with the Appeals Court, we reverse the judgment of the Superior Court, and we remand the case for further proceedings consistent with the views expressed herein.

The relevant facts, as recounted by the master in his subsidiary findings which were adopted by the trial judge, are as follows. On October 29, 1970, the plaintiff was appointed a special police officer by Wayland for a term expiring on April 30, 1971. He was paid at the rate of $3.70 an hour for an eight-hour day. His duties were similar to those performed by regular police officers: cruiser patrol, traffic direction, and appeance in court for the purpose of giving

testimony. He was issued a uniform, badge, and service revolver, and he was authorized to make arrests.

On November 30, 1970, while responding to a call, Jones was struck on the left temple area by a nineteen-ounce stone which had entered the driver's window of the cruiser. Although stunned and dazed, Jones appeared well. As required by departmental regulation, he filled out an accident report. Jones was taken to Leonard Morse Hospital in Natick where he was examined, but not treated, by the designated town physician. See G. L. c. 41, § 111F. He was thereafter driven by police cruiser to his home. The physician, Dr. Kim, decided that Jones's period of incapacity was of one day's duration.

When he awoke the next day, Jones discovered that he could not see from his left eye; he was dizzy and experienced sharp pain in that general area. On December 4, 1970, he was referred by Dr. Kim to an ophthalmologist, Dr. Greenberg. Dr. Greenberg prescribed no treatment, and he determined that Jones was not incapacitated. The master and the judge found that Dr. Greenberg's findings were inconclusive on the possible existence of hysterical amblyopia. The chief of police arranged for Jones to be examined by a Dr. Lessell on December 5, 1970. Dr. Lessell diagnosed the injury as a possibly damaged optic nerve; he concluded that nothing further need be done. Jones returned to police duty; however, he was unable to perform his official functions with the same ability as before the injury. He therefore requested from the chief of police a leave of absence for reason of disability. The request was denied. Jones attempted thereafter to discharge his official responsibilities, but was unable to do so. On March 4, 1971, he tendered his resignation to the board of selectmen. The resignation read in part: "Due to circumstances and incidents which have occurred during and after my active duty as an officer, I feel as though my resignation is in the best interest of the town of Wayland." [3] The board on March 15, 1971, voted to accept

---

[3] No issue concerning the voluntariness of the resignation was argued before this court. Jones devotes one sentence of his brief to a suggestion that the resignation was induced "by certain selectmen . . . [and] by bad

the resignation, with the understanding that it would not "affect or jeopardize any claim now under consideration for the period during which [Jones] acted as an officer for the Town."

Jones gave notice in writing on January 21, 1971, to the Insurance Company of North America of his claim under a group health and accident policy carried by Wayland for the benefit of its employees. He received $6,000 in compensation in addition to payments made for medical expenses.

Dr. Lamont, an optometrist who had examined Jones periodically for ten years prior to the injury, examined him on September 28, 1971, and determined that Jones's vision had deteriorated to the extent that he had lost 95% of the vision in his left eye and that there was no useful acuity in that eye. Jones was also examined by Dr. Anderson, a neurologist, who found that Jones was suffering from post-traumatic hysterical amblyopia which was causally related to the November 30, 1970, injury and which could continue indefinitely. Dr. Weiss, a psychiatrist, confirmed this diagnosis; Dr. Weiss did not, however, examine Jones. Both agreed that existence of the condition rendered Jones incapacitated for the performance of regular police duty.

After conducting a supplementary fact-finding proceeding pursuant to Mass. R. Civ. P. 53 (e) (2), 365 Mass. 817 (1974), the judge found that the only doctor "designated" by Wayland was Dr. Kim; that Dr. Kim determined the period of incapacity to be one day only; that Dr. Kim's findings were restricted to physical aspects of the injury, as he was not qualified to determine the extent of psychic in-

___

feelings between the Chief and the plaintiff." This assertion, unsupported by any record references, is insufficient to present the issue of voluntariness to this court. Mass. R. A. P. 16 (b), 365 Mass. 860 (1974). Moreover, according to the record properly before us, this issue was not raised at the master's hearing or in the Superior Court, and there were no findings by the master or by the Superior Court judge as to involuntariness. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956), quoting from *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937).

capacity; that from the day immediately following the physical injury Jones has had a loss of vision brought about by psychic causes; and that no doctor designated by the town has found this loss of vision no longer to exist.

After making these factual findings, the Superior Court judge in his order for judgment stated his ultimate findings and declared the rights of the parties. He found that Jones was a "police officer" who was "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own." G. L. c. 41, § 111F. He further found that c. 41, § 111F, imposes a mandatory duty on Wayland to grant the plaintiff leave without loss of pay from the date on which the incapacity was incurred until the plaintiff retired, or was pensioned, or until the incapacity was found by a designated physician no longer to exist. The judge found that none of these contingencies had in fact occurred and ordered that payment be made in the amount of $31,693, plus uncompounded interest for the period beginning with the date of the injury, November 30, 1970, and ending January 27, 1975. He also ordered that further payments be made until Jones retires, is pensioned, or is found not to be incapacitated any longer.[4] It was from these findings and order for judgment that Wayland appealed to the Appeals Court.

1. *Scope of Review.*

The defendant has raised numerous arguments relating to the sufficiency of the evidence on which the master's findings were based. The order of referral to the master, dated January 31, 1973, did not direct the master to report the evidence. Nevertheless, the master reported his subsidiary findings on which his general findings (conclusions) were based. The Superior Court judge adopted these subsidiary findings. In addition, he found it necessary to receive addi-

---

[4] The judge's rulings coincide to a substantial degree with the ultimate findings of the master. The master found, however, that § 111F payments should terminate on April 30, 1971, the date on which Jones's appointment as a special police officer expired.

tional evidence, and his ultimate findings were based on the master's findings and the evidence which was so received. In such a situation, the master's subsidiary findings are open to attack only on the basis that they are clearly erroneous. Mass. R. Civ. P. 53 (e) (2).[5] However, even where the subsidiary findings are not clearly erroneous, the presiding judge may nonetheless reach his own ultimate conclusions. J.W. Smith & H.B. Zobel, Rules Practice § 53.11 (1977). Indeed, where subsidiary findings are reported by the master, both the trial judge and the appellate court are obligated to draw their own inferences from these findings. *Wormstead* v. *Town Manager of Saugus,* 366 Mass. 659, 660 (1975). Although we are thus empowered to reach our own ultimate conclusions from the master's subsidiary findings, the master's findings will not be disturbed unless clearly erroneous. Most of Wayland's contentions relate to the sufficiency of the evidence on which those subsidiary findings were based. Uniformly, they are not clearly erroneous and, except as hereinafter discussed, Wayland's arguments are not grounds for reversal.

2. *Scope of Term "Police Officer."*

General Laws c. 41, § 111F, provides that "[w]henever a police officer . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, . . . he shall be granted leave without loss of pay for the period of such incapacity." Wayland contends that the statute applies only to "regular" police officers and, there-

---

[5] Although the proceeding before the master antedated the effective date of the Massachusetts Rules of Civil Procedure, proceedings in the trial court were pending when the new rules became effective. Thus, they were governed by standards set out therein. See Mass. R. Civ. P. Transitional Rule 1A (5), 365 Mass. 731 (1974). At any rate, the standard, though different in its terminology, is essentially identical to that under former practice: the master's findings of fact are binding unless "mutually inconsistent, contradictory, plainly wrong or vitiated in view of the controlling law." See *Wormstead* v. *Town Manager of Saugus,* 366 Mass. 659, 660 (1975), quoting from *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 825 (1973).

fore, because Jones was hired as a "special" police officer, he is ineligible for the statutory benefits.

We disagree. The terms of the statute do not lend themselves to so restrictive a reading. There are numerous instances in the General Laws where the term "police officer" has been qualified by antecedents such as, inter alia, "regular," "permanent," and "full-time." We refer to the opinion of the Appeals Court which enumerates those statutes wherein the term "police officer" is thus qualified. See *Jones* v. *Wayland*, 4 Mass. App. Ct. 725, 730-731 (1976). We think the absence of any similar restrictive term in § 111F is significant.

We also note that the statute provides that "[a]ll amounts payable under this section . . . shall be deemed to be the regular *compensation* of such police officer" (emphasis added). Regular police officers are ordinarily paid an annual salary, see G. L. c. 40, § 21A, and c. 41, § 108A; special police officers are paid an hourly wage for work actually performed. The term "compensation" encompasses both salary and wages. Thus, the equating of statutory benefits with "compensation" strengthens our conclusion that § 111F applies to both regular and special police officers.

Moreover, we have previously found eligible under § 111F an off-duty police officer who was directing traffic for and was paid by a private contractor, *Yates* v. *Salem*, 342 Mass. 460 (1961), and a probationary police officer, *Thibeault* v. *New Bedford*, 342 Mass. 552 (1961). The statutory protection extends to any officer obligated to perform his duty in accordance with the law. *Yates* v. *Salem*, *supra* at 461. As Jones was such a police officer, he is eligible for benefits under § 111F, providing, of course, that he meets the remaining statutory requirements.

Wayland argues that the General Laws express a clear preference for the employment of full time regular police officers in lieu of special police officers and that such a legislative policy would be effectuated best by denying § 111F benefits to special police officers. Assuming for the moment the correctness of Wayland's proposition that there exists

such a statutory preference,[6] it would seem that the objective of encouraging the cities and towns to hire regular police officers would be furthered by holding towns liable under § 111F for injuries to special police officers, not by relieving them from liability. Therefore, we can perceive no valid policy reason for excluding special police officers from the scope of § 111F.

3. *Factors Operating to Terminate § 111F Benefits.*

After taking additional evidence, the Superior Court judge found that Dr. Kim was the only physician designated by the board of selectmen to examine police officers injured while discharging their official functions. Dr. Kim examined Jones on the date of the injury and determined that the injury was trivial in nature and that Jones's incapacity existed for that day only. However, it was not until the next day that the symptoms of hysterical amblyopia, a psychic rather than a physical disorder, manifested themselves. This condition was found to render Jones incapacitated for the performance of his duties as a policeman. Dr. Kim did not diagnose this condition, nor did he examine Jones after the diagnosis was formulated. From the date of the injury onward, no physician designated by Wayland determined that this incapacity had terminated. The record amply supports the findings that Dr. Kim was the only doctor designated by the board of selectmen to determine that "such incapacity no longer exists" and that he made no such determination after Jones was diagnosed as suffering from hysterical amblyopia.

---

[6] Wayland arrives at this conclusion because of the extensive protections afforded regular policemen by the General Laws, see, e.g., G. L. c. 40, § 21A; c. 41, §§ 96B, 108A, and 108C; c. 31, § 48, and the absence of similar benefits for special police officers.

Citing *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 663 n.5 (1975), Wayland argues that § 111F was enacted to fill a gap in the Massachusetts workmen's compensation law and that the enactment of St. 1951, c. 109, § 1, which amended G. L. c. 152, § 1, had already filled that void in so far as special police officers are concerned. However, the coverage of said § 1 provides only that a special police officer who is being paid by a private contractor and is working for him shall be considered the employee of that contractor for purposes of c. 152.

We do not think that Dr. Kim's original determination of the length of incapacity should foreclose Jones's further recovery under the statute. From a sheer policy perspective, the statutory benefits should extend to service-related incapacities which appear subsequent to the date of the original injury, even where, as here, the officer returns to duty thinking that he is fully recovered. Dr. Kim, even had he attempted to do so, was not medically qualified to determine that the hysterical amblyopia had abated, as indicated by the facts that he referred the patient to an ophthalmologist and that he himself was unable to determine the cause of the vision loss.[7]

In essence, Wayland's argument is an attack on the sufficiency of the showing of a causal nexus between the physical injury and the subsequent hysterical amblyopia. We believe that the master's finding on this issue as adopted by the trial judge is adequately supported by the portions of the record appropriately before us.

An optometrist who had examined Jones periodically for ten years prior to the injury and who examined him on September 28, 1971, testified before the master. His testimony, which was based on tests conducted by him, tended to show that Jones experienced a 95 % loss of vision in his left eye, that he was unable to count fingers at any distance, and that he was not malingering.

An additional witness, a neurologist who examined Jones on March 27, 1973, testified to the effect that Jones could not see anything with his left eye beyond counting fingers held no more than one foot away. On the basis of the information related to the neurologist by the patient and the case history as disclosed by the medical records pertaining to the

---

[7]Neither the fact that Dr. Kim was unable to diagnose the hysterical amblyopia nor the fact that Dr. Kim found no further incapacitating injury disqualifies Jones from receiving § 111F benefits. While the determination that the incapacity no longer exists must be made by a designated physician, the finding of incapacity itself may be made by any qualified doctor.

injury, he concluded that Jones was suffering from post-traumatic hysterical amblyopia and was therefore incapable of performing the normal duties of a police officer.

On the basis of the foregoing, the trial judge properly found that Jones was "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own." Though we think incorrect Wayland's assertion that the only testimony connecting the loss of vision with the original physical injury was offered by Jones himself, we note at any rate that the plaintiff's testimony is relevant and competent on that issue and that "[t]here is no rule of law that such causal connection must be shown by expert testimony alone." *Votour* v. *Medford,* 335 Mass. 403, 406 (1957), quoting from *McAuliffe* v. *Metcalfe,* 289 Mass. 67, 69 (1935).

4. *The Resignation.*

The master and the Superior Court judge found as fact that Jones submitted his resignation as a special police officer to the board of selectmen on March 4, 1971, and that the board of selectmen accepted the resignation on March 15, 1971, subject to the proviso that it would not "affect or jeopardize any claim now under consideration for the period during which [Jones] acted as an officer for the Town." As has been stated, these findings are fully supported by the record. The Superior Court judge ruled that Jones's right to continued payments under § 111F was unaffected by the acceptance of his resignation.[8] We take a different view regarding the effect of his resignation.

Absent a showing of fraud, coercion, or duress, none of which is present here, any public employee may terminate his or her employment by tendering a resignation. *Campbell* v. *Boston,* 337 Mass. 676 (1958). "A complete resignation, as was the instant one, after acceptance, operates to sever the officer from the office." *Warner* v. *Selectmen of*

---

[8] *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484 (1941), was not brought to the attention of the Superior Court judge or the Appeals Court by Wayland's counsel. He did, however, bring the case to our attention.

*Amherst,* 326 Mass. 435, 439 (1950). The wages of a public employee are an incident of employment, and abandonment of the position has the same effect as would the breach of a contract to render personal services: it bars the employee from recovering unearned wages. *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484 (1941). See *Branche* v. *Fitchburg,* 306 Mass. 613 (1940); *Ladd* v. *Newburyport,* 232 Mass. 570 (1919). Similarly, the payments to a police officer under § 111F, which are to be paid "at the same times and in the same manner as . . . the *regular compensation* of such police officer" (emphasis added), G. L. c. 41, § 111F, are incidents of his employment and are contingent on the continued employment of the officer. We therefore conclude that the acceptance of Jones's resignation by the board of selectmen operated to terminate his right to continued compensation under § 111F.

Moreover, under G. L. c. 41, § 111F, an injured officer is granted a leave of absence without loss of pay until such time as the officer is no longer disabled or until such time as the officer is required to leave his or her employment, either by retirement or by pension. We think the legislative scheme is designed to afford some protection to a disabled officer pending recovery or pending a severance from employment due to factors beyond the officer's personal control, i. e., retirement or pension. Read in this light the statute operates to terminate benefits once it is clear that the injured person will no longer continue service as an active police officer or fire fighter. Thus, the statute looks to a resumption of duties as soon as the incapacity ends. A voluntary resignation, on the other hand, negates any thought that duties will be resumed. Therefore we think that a voluntary resignation should have the same consequences under the statute as the termination of service by retirement or pension. Hence, we conclude that on its acceptance a voluntary resignation terminates all benefits under G. L. c. 41, § 111F.[9]

---

[9] Thus we need not reach the issue of the effect of the expiration in April, 1971, of Jones's appointment as a special police officer of Wayland.

Jones argues, however, that since the board accepted his resignation subject to the condition that it would not jeopardize any claims which he had against the town, payment of § 111F benefits should continue notwithstanding his resignation. We think, however, that the proviso, when fairly read, was intended only to preserve Jones's claims[10] and not to extend Wayland's liability under § 111F.

5. *Effect of Insurance Payments.*

Jones made a claim under a group health and accident insurance policy maintained by Wayland. The insurer paid him $6,000 "in addition to medical expenses." There were three separate coverages under the policy which are relevant here: (1) payment for loss of sight; (2) a weekly indemnity for every week the claimant is "unable to perform every duty pertaining to his occupation"; and (3) medical expenses.[11] Wayland argues that the payment received under this policy should be deducted from any amount for which Wayland is found liable to Jones under § 111F. Wayland, however, is not obligated under § 111F to compensate Jones for loss of sight or medical expenses. Thus, the issue concerning the computation of damages is whether the portion, if any, of the policy payment allocable to indemnity may be deducted from the amount which Wayland must pay to Jones as compensation under § 111F.

---

[10] The record indicates that Jones had filed a claim under a group health and accident policy maintained by Wayland, see part 5, *infra*, in January, 1971. In addition, Wayland concedes that Jones probably has a claim for disability retirement under G. L. c. 32, § 85H. From the record appropriately before us, it is most likely that the proviso accompanying the acceptance of Jones's resignation referred to these claims.

[11] In its answer, Wayland alleged that Jones received from the insurer a sum certain in addition to medical expenses and that the master found this allegation correct. At a proceeding before the Superior Court judge, Wayland offered the group insurance policy; although it was marked for identification purposes, it was not admitted in evidence. Wayland duly noted its exception. Additionally, it requested a ruling that any amount owing under § 111F be reduced by any recovery had under the terms of the policy. Such request for ruling was not acted on by the trial judge. We consider the insurance contract as properly before us.

As a general rule, a tortfeasor's liability to an injured person shall *not* be reduced by the amount of compensation received by the injured person pursuant to an insurance policy. 22 Am. Jur.2d Damages § 206 (1965). Commonly referred to as the "collateral source rule," the doctrine requires that "the damages . . . must be paid by one who has caused the insured's disability." *Shea* v. *Rettie,* 287 Mass. 454, 458 (1934). It is based on the rationale that if there is to be a "windfall," such benefit should accrue to the injured party rather than to the wrongdoer. Annot., 11 A.L.R.3d 1115, 1116 (1967). 22 Am. Jur.2d Damages § 206 (1965). Where, as here, the party found liable is not responsible for the injury, the rule would appear to be inapplicable. Moreover, the rule is not applicable when the party found liable has itself established a fund to be drawn on in the event of its liability to another person. Cf. *Yarrington* v. *Thornburg,* 58 Del. 152 (1964). Indeed, Wayland most likely acquired such coverage with a view toward possible liability under § 111F. It should not be penalized for its foresight.

Although the Superior Court judge properly did not consider in his computation of damages any amounts paid under the policy for medical expenses or loss of sight, we conclude that he erred when he did not reduce Wayland's liability by the amount paid under the policy to Jones as an indemnity for the period during which he was "unable to perform every duty pertaining to his occupation." On remand, the Superior Court judge should determine how much, if any, of the $6,000 insurance payment was paid in connection with the partial disability coverage under the health and accident policy.

In sum, Wayland is obligated under § 111F to make payments to Jones for the period from November 30, 1970, the date of the injury, to March 15, 1971, the date of the acceptance of Jones's resignation. However, any amount of the $6,000 paid under the insurance policy which is allocable to

indemnity is to be deducted from Jones's recovery under § 111F.[12]

As the Appeals Court correctly observed, the defendant included extensive material in the record appendix, which was not properly a part of the record in this proceeding. See *Jones* v. *Wayland*, 4 Mass. App. Ct. 725, 727-729 (1976). We think that the inclusion of such an excessive amount of unnecessary material mandates an order that no costs be taxed against the plaintiff. Mass. R. A. P. 26 (a), 365 Mass. 873 (1974). Cf. *Denman* v. *County of Barnstable*, 346 Mass. 412, 415 (1963), cert. denied, 377 U.S. 948 (1964).

Accordingly, the judgment of the Superior Court is reversed, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[12]The amount paid Jones for wages during the period covered by § 111F should also be deducted from the payment to be made under § 111F.