ALLAN FERRY *vs.* CLAIRE E. POWERS. April 16, 1982. Allan Ferry is the father of Diane E. Ferry, a retarded person, born in 1946. His former wife, Claire E. Powers, from whom he was divorced in 1955, is Diane's mother. Mrs. Powers lives in Danvers with her second husband. Ferry, now in his early sixties, lives in Alton Bay, New Hampshire, with his third wife, now in her middle thirties, and her five children, all sixteen or under. Ferry's second marriage ended in divorce.

After World War II, Ferry remained as an officer in the army for some years. He then worked, in somewhat sporadic fashion, with an electric company, a small newspaper, and on other jobs. In recent years he was an attendant at the New Hampshire State Hospital. There he was instructed in work with mentally ill persons. His wife has been trained as a nurse and, to some extent, in working with retarded persons. At the time of the report (late 1980) of the master mentioned below, Ferry's family's sole income was $611 a month from Social Security, apart from some investment income derived from Mrs. Ferry's savings. Ferry had practically no contact with his children from 1959 until 1977. At least since

then he has laid aside alleged earlier tendencies and become an active member of the Mormon Church.

A probate judge appointed a master to hear the dispute between Diane's parents over her guardianship. The master's very thorough and perceptive report has been adopted.

The master's report, in addition to setting forth essentially the facts stated above, reviewed the long history of Diane's unhappy difficulties. She was committed to Danvers State Hospital in 1965 after prolonged efforts to treat her at home. Diane's mother and sister have maintained contact with Diane and Diane has been at home on many weekends. Diane and her mother seem to have a warm affection for each other. Experimental efforts to have Diane at home have failed, because of Diane's assaultive behavior (which has been increasing) and many physical infirmities, including deafness. She requires various forms of medication. Ferry, after resuming contact with Diane in 1977, has seen her weekly and has taken her for day trips off the hospital grounds. He now "appears to be devoted to attempting to help Diane" and "his present efforts . . . are done with the best of intentions."

We summarize the master's general findings: (1) Ferry's proposals to remove Diane to Alton Bay, despite his well intended efforts to provide for her there, are not in her best interests. She has complicated and varied needs. Her assaultive behavior makes it impossible to predict how she would adapt to life in Ferry's household. (2) Diane should be where her ongoing relationship with her mother can be maintained. Her more recent relationship with her father also is to be encouraged. (3) Gradually Diane should be reintegrated in the community under plans developed by the Department of Mental Health (DMH), taking account of all her needs. Placement of Diane in a "half-way" house and her transfer from Danvers as rapidly as may be feasible will best develop her potential for usefulness. In this she "requires the coordinated assistance of many professionals, as well as the support of [both] her parents," who (because of long bitterness) "cannot be expected to cooperate" with each other. (4) Diane is so retarded as to be incapable of making informed decisions about her affairs. Failure to appoint a guardian will create unreasonable risk to her health, welfare, and property. Neither Ferry nor Mrs. Powers should be appointed guardian if a suitable third person can be found to serve. If no such third person can be found, Mrs. Powers should be appointed.

After hearing, a second probate judge appointed Mrs. Powers to be Diane's guardian with power to authorize committing Diane to a mental health facility and whatever medical treatment is reasonably required in Diane's best interest. The guardian and DMH are to develop a plan for Diane's transfer from Danvers to a half-way house. A guardian ad litem is to monitor the situation and may bring to the court's attention for prompt hearing any difficulties over visitation rights and other matters. We note with approval this provision. It should be employed wisely to

promote sensible cooperation between Diane's parents in her interest, cooperation which their respective counsel should encourage. Ferry has appealed.

1. The judge's order was well justified by the master's findings. Those findings constitute clear and convincing support for granting to the new guardian power to authorize committing Diane to a mental health facility and to permit other treatment for her. His order is consistent with G. L. c. 201, § 6A, as amended through St. 1978, c. 478, § 95, and with G. L. c. 123, § 1, as amended through St. 1980, c. 571, § 1. Cf. *Doe* v. *Doe*, 377 Mass. 272, 277-281 (1979). So far as the doctrine of "substituted judgment" may be involved, the judge clearly acted reasonably. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 749-753 (1977). See also *Custody of a Minor (No. 1)*, 385 Mass. 697, 703-705 (1982).

2. The scanty record before us reveals no sufficient reason for requiring the second probate judge to recuse himself.

3. So far as appears in this record, Ferry's counsel, in filing objections to the master's report, completely failed to comply with Rule 24 of the Probate Court. He did not "upon written request presented with the objection" ask that the master "append to his report . . . [a] summary of so much of the evidence as" would be necessary to deal with the objection. Thus we need not examine the evidence before the master. See *Lewis* v. *Desrosiers, ante* 997 (1982). See also *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 741-742 (1979); Mass.R.Civ.P. 53, 365 Mass. 817-820 (1974). Cf. Rule 49 of the Superior Court, as amended (1974). There was no justification for having the long transcript of the hearing before the master reproduced as an appendix. See *Jones* v. *Wayland*, 4 Mass. App. Ct. 725, 726-729, 737 (1976), *S.C.* 374 Mass. 249, 254, 263 (1978).

Mrs. Powers is to have costs of this appeal. She is to bear no part of the expense of the unnecessary printing, which appropriately should be borne by Ferry's counsel if he was responsible for ordering it. The order of the probate judge is affirmed and the case is remanded to the Probate Court for any appropriate further proceedings.

*So ordered.*

*Donald E. McNamee* for the plaintiff.
*Joan Rachlin (Jeanne Barkin* with her) for the defendant.