Robert J. Hennessey vs. Town of Bridgewater & others.[1]

Plymouth. November 1, 1982. — February 22, 1983.

Present: Hennessey, C.J., Liacos, Nolan, Lynch, & O'Connor, JJ.

*Police,* Incapacity, Discharge.

Dismissal of a police officer for breach of duty and illegal conduct while he was on paid leave as a result of an injury sustained in the course of duty terminated his right to receive disability benefits under G. L. c. 41, § 111F. [224-227]

Civil action commenced in the Superior Court Department on December 22, 1978.

The case was heard by *Dolan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard K. Sullivan (Robert P. Kelly* with him) for the plaintiff.

*Robert G. Clark, III,* for the defendants.

Lynch, J. The plaintiff brought this action pursuant to G. L. c. 231A, seeking a declaration of his right under G. L. c. 41, § 111F, to receive leave without loss of pay as a police officer incapacitated due to an injury sustained in the course of duty.[2] A judge of the Superior Court declared that the

---

[1] The board of selectmen, the treasurer, and the chief of police of Bridgewater were also named as defendants.

[2] General Laws c. 41, § 111F, as amended through St. 1977, c. 646, § 2, provides in material part: "Whenever a police officer . . . of a city [or] town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer . . . has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers . . . in such city [or] town . . . determines that such incapacity no longer exists."

plaintiff's right to receive benefits ended on April 24, 1978, the date on which the board of selectmen sent him a termination notice. The plaintiff appealed to the Appeals Court, which issued a summary disposition reversing the Superior Court judgment and remanding for "(1) a determination (preceded by an evidentiary hearing, if necessary) of the amount of any recovery by the plaintiff for any claim arising out of the occurrence which caused his disability and (2) the entry of a new judgment declaring the plaintiff to be entitled to benefits under G. L. c. 41, § 111F, reduced by the amount of recovery by him as so determined." 13 Mass. App. Ct. 1106 (1982). We granted the defendants' application for further appellate review. We affirm the judgment of the Superior Court.

The trial judge found the following material facts. The plaintiff was permanently appointed as a regular police officer on May 22, 1977, by the board of selectmen of Bridgewater. At all times relevant to this action, the plaintiff was a probationary, nontenured police officer.[3] On March 16, 1978, the plaintiff responded to a call to assist emergency medical technicians assigned to the fire department. The plaintiff helped the technicians to carry a stretcher, and later complained to one of them of a pain in his right hand. The plaintiff made no report of the incident to the police department at that time. The following day, March 17, the plaintiff injured his right hand when he fell in a parking lot while alighting from a police cruiser. He was on duty at the time, and had been about to enter C & C Liquors to purchase cigarettes. The plaintiff reported this injury to the chief of police (chief), and on his advice, went to Bridgewater Medical Center for treatment, after typing an employee accident report form on which he referred to both the March 16 and the March 17 incidents. The plaintiff was entered on departmental records as having been injured in

---

[3] General Laws c. 31, § 20D, then in effect, required a probationary, nontenured police officer to serve a term of twelve months before attaining tenure. Effective January 1, 1979, G. L. c. 31, was recodified. St. 1978, c. 393, § 11. See G. L. c. 31, § 61, for this provision.

the line of duty. Effective March 17, he was granted leave
without loss of pay pursuant to G. L. c. 41, § 111F. From
March 20, 1978, until the time of trial the plaintiff was
treated by Dr. Richard Greenberg of the Brockton Ortho-
pedic Association, who diagnosed his condition as tenosyno-
vitis of the right palm. Dr. Greenberg informed the chief in
a letter of April 20, 1978, that the plaintiff's hand was not
responding to therapy and required a splint. The plaintiff
ultimately underwent exploratory surgery in November,
1978, and at the time of trial the loss of feeling in his right
index finger had diminished and in addition he had a fifteen
degree loss of extension, with limited lateral movement, of
the middle and index fingers. The judge found that the
plaintiff was incapacitated from March 17, 1978, and con-
tinuing thereafter, by an injury sustained without fault of
his own while in the performance of his duty, and that
while he was able to perform 95% of the functions of a po-
lice officer, he was "unable to perform the full duties of a
regular police officer including that of being able to effec-
tively operate a firearm."

Approximately one month prior to the plaintiff's injury,
the chief initiated an investigation of certain police officers
relating to their alleged purchase of or smoking of marihuana
or observing such conduct by fellow officers and failing to
report those engaged in such activities. On March 30, the
plaintiff appeared with his attorney at the chief's office in re-
sponse to an order "to report . . . to answer questions as to an
investigation which is presently pending concerning the use
by members of the Bridgewater Police Department whether
past or present of marijuana while on duty or off." On April
24, 1978, the board of selectmen notified the plaintiff that
he was terminated; the reasons enumerated by the board for
the discharge are set forth below.[4] The plaintiff's compen-

---

[4]"1. On or about March 30th, 1978, at approximately 2:08 P.M., pur-
suant to order of the Chief of Police for the Town of Bridgewater, certain
questions were propounded to you . . . and to which you made response in
accord with the transcript of the electronically reproduced interview. . . .

"As you are aware, as of March 30th, 1978, the Chief of Police . . . was
in the process of conducting an investigation relative to the use by members

sation under G. L. c. 41, § 111F, was terminated on the
same date. The judge ruled that "the plaintiff's right to re-
ceive benefits pursuant to G. L. c. 41, [§] 111F ended on
April 24, 1978, as a result of his termination as a police offi-
cer by the appointing authority as said termination was
made for reasons independent of and not related to the plain-
tiff's incapacity." The sole issue before us is whether the
town's discharge of the plaintiff was legally effective to ter-
minate his benefits under G. L. c. 41, § 111F.

During the twelve-month probationary period, a police
officer may be terminated pursuant to G. L. c. 31, § 20D,
for reasons relating to his "conduct or capacity" or to "the

of the Bridgewater Police Department, then past or present, of marijuana
while on duty or off duty. Further, you were aware at the time and place
set forth of certain Plymouth County Grand Jury proceedings resulting in
the indictment of [another officer] for matters related to statutorily de-
fined controlled substances.

"At the hereinbefore referred to time and place, you neglected, failed,
declined or refused to respond to questions as propounded to you by the
Chief . . . thereby being insubordinate to the Chief by reason of your fail-
ure to cooperate in the investigation as referred to.

"The Appointing Authority is of the opinion that you were under a duty
by virtue of your office to respond to the questions as propounded . . . and
that you were not justified in failing to answer based upon any constitu-
tional grounds or the advice of your counsel.

"The questions . . . were specifically, directly and narrowly related to
the performance of your official duties without any requirement that you
waive any constitutional guarantees.

"The responses by you to the questions . . . constitute a failure to di-
vulge information pertinent to the issue of your use or abuse of the public
trust and contained and were relevant to matters pertinent to your faith-
ful performance of the duties of your office.

"It is further the opinion of the Appointing Authority that the questions
propounded by the Chief . . . were reasonably designed to inform the
Chief whether or not you had failed to report matters which you should
have reported and that, at no time, was any testimony or response coerced
from you by threat of discharge or waiver of constitutionally guaranteed
rights.

"2. The Appointing Authority has been informed that you were pres-
ent, together with other police officers . . . where marijuana was pur-
chased and that you made observations of this being done.

"3. On February 20th, 1978, you admitted buying marijuana for [$10].

"4. You had observed another police officer appropriate to his own use
marijuana from motor vehicles being searched in the course of his employ-
ment."

character or quality" of his work performance.[5]  Since the
plaintiff has raised no question with respect to the substance
of the charges made against him or the validity of the termi-
nation procedure, we need only note that the rights of non-
tenured employees to challenge a termination under G. L.
c. 31, § 20D, are limited.  See *Costa* v. *Selectmen of Bille-
rica,* 377 Mass. 853, 859-861 (1979).  The town's reasons for
discharging the plaintiff imputed illegal conduct as well as
breach of duty, and were thus properly particularized.  See
*Costa* v. *Selectmen of Billerica, supra* at 859 n.9, 861.  See
also *McSweeney* v. *Town Manager of Lexington,* 379 Mass.
794, 797 n.5, 796 n.6 (1980).  At the most, the plaintiff
might have been afforded, under certain conditions, a hear-
ing for the opportunity to clear his name.  See *Stetson* v.
*Selectmen of Carlisle,* 369 Mass. 755, 762-764 (1976).[6]

The judge found the plaintiff's termination was lawfully
predicated on his conduct, capacity, character, or quality of
work.  She further found "based upon the reasons stated in
the April 24, 1978 notice of termination and viewed in the
light of the case law on the termination of tenured police of-
ficers, it can be reasonably inferred that the plaintiff would

---

[5] General Laws c. 31, § 20D, as amended then through St. 1971, c. 182,
§§ 1, 2, and in effect at the time of the plaintiff's termination, provides:
"If the conduct or capacity of a person serving a probationary period
under an appointment in the official service or labor service, or the char-
acter or quality of the work performed by him, is not satisfactory to the
appointing authority, he may, at any time after such person has served
thirty days and prior to the end of such probationary period, give such
person a written notice to that effect, stating in detail the particulars
wherein his conduct or capacity or the character or quality of his work is
not satisfactory, whereupon his service shall terminate.  The appointing
authority shall at the same time send a copy of such notice to the director.
In default of such a notice, the appointment of such person shall become
permanent upon the termination of such period; provided, however, that
the director, with the approval of the commission, may establish proce-
dures assuring the evaluation by appointing authorities of the perform-
ance of police officers during such probationary period."  See note 3,
*supra*; G. L. c. 31, § 34.

[6] The record does not show that the plaintiff ever requested a hearing or
denied the substance of the reasons given for his termination.  See *Grant*
v. *Police Comm'r of Boston,* 7 Mass. App. Ct. 296, 299 (1979).

have been terminated irrespective of his incapacity due to his injury and his status as a probationary police officer. While the standard for termination of probationary employees is less than that of 'just cause', the reasons for the plaintiff's termination were equivalent to the 'just cause' standard required for the termination of a tenured officer, thus making his expulsion inevitable." This finding is supported by the evidence and is not clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). See *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 38 (1975), cert. denied, 423 U.S. 1048 (1976), quoting *Gardner* v. *Broderick*, 392 U.S. 273, 278 (1968) ("If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, . . . the privilege against self-incrimination would not have been a bar to his dismissal"); *Silverio* v. *Municipal Court of the City of Boston*, 355 Mass. 623, 629-630, cert. denied, 396 U.S. 878 (1969) ("We deem [a police officer's] discharge to have been on the broad ground that he failed to answer any questions [posed by his superior and in the presence of his attorney] concerning his conduct as a police officer. The inquiry was in two parts: [1] questions reasonably designed to inform his superior whether he had failed to report matters which he should have reported, in particular, his knowledge of an auto theft ring involving three other policemen; and [2] questions as to his conduct before the grand jury in their investigation of the matter. The ground of discharge was his complete failure to perform his duty in this interrogation").

The plaintiff argues that, irrespective of the basis of his termination, his right to benefits under G. L. c. 41, § 111F, cannot be cut off by a notice of termination pursuant to G. L. c. 31, § 20D, but can only be extinguished through one of the methods set forth in § 111F, i.e., upon his retirement, or upon his being pensioned in accordance with law, or upon a medical determination that his incapacity no longer

exists. The plaintiff urges that this case is controlled by our decision in *Thibeault* v. *New Bedford,* 342 Mass. 552 (1961), where we held that a notice terminating the employment of a probationary police officer, rendered during the period of his incapacity and based solely upon that incapacity, could not become effective "until the end of that period." *Id.* at 557. We do not agree that the *Thibeault* holding requires a judgment for the plaintiff in the present circumstances. In *Thibeault,* the petitioner was deemed unsuitable for permanent appointment as a police officer on two grounds: "(1) the failure to complete the . . . probationary period and (2) the heart attack [suffered during the probationary period] and the consequent absence from work." *Id.* at 558. We said that "[t]he chief was not obliged to find that a person [subject to injury of the kind sustained] was a satisfactory person for permanent employment," *id.,* but we held that a termination notice under G. L. c. 31, § 20D, "cannot cut off an accrued right to a leave of absence with pay under G. L. c. 41, § 111F." *Id.* at 557. Our holding precluded the city from using the officer's incapacity and resultant absence as reasons, under one statute, to withhold benefits provided by another statute to compensate for that very incapacity. By contrast, the present plaintiff was terminated under G. L. c. 31, § 20D, for reasons not causally connected, indeed not related in any way, to the provisions of G. L. c. 41, § 111F. The judge correctly declined to apply the *Thibeault* decision to these circumstances, where the plaintiff's termination was for breach of duty and illegal conduct and was the equivalent of a discharge for "just cause" under then G. L. c. 31, § 43.

Nor do we agree with the plaintiff that the language of G. L. c. 41, § 111F, "specifically provides that the benefits payable thereunder shall cease only if such recipient is 're-tired or pensioned in accordance with law or for any period after a physician designated by the board or officer author-ized to appoint police officers . . . determines that such inca-pacity no longer exists.'" Although the occurrence of any of these three events will require a termination of benefits under

§ 111F, we do not consider them conditions precedent to termination. The statute itself does not mandate the continuation of payment of benefits until one of these three events has occurred; rather, the statute prohibits continuation of benefits *after* one of the events has occurred. See note 2, *supra*. We think that the Legislature, in proscribing benefits after the occurrence of retirement, pensioning, or a medical determination of fitness, evinced the natural and reasonable intention that an employee should not receive double benefits or be granted a windfall. Cf. *Jones* v. *Wayland*, 380 Mass. 110, 119-120 (1980). We do not believe that it was the Legislature's intention, in seeking to avoid such a result, to bind cities and towns to indefinite payment of wages to persons lawfully separated from employment by methods other than those delineated in § 111F.

We have previously held that a police officer's self-declaration of fitness for "light duty," *Thibeault* v. *New Bedford*, 342 Mass. 552, 554-556 (1961), and voluntary resignation of his position, *Jones* v. *Wayland*, 374 Mass. 249, 260 (1978), were effective to trigger a termination of rights under G. L. c. 41, § 111F. We perceive no reason founded on legislative policy or on logic to hold otherwise in this case. The statute clearly contemplates, in instances not resulting in retirement or pensioning, a return to duty. See *Jones* v. *Wayland*, 380 Mass. 110, 121-122 (1980), *S.C.*, 374 Mass. 249, 260 (1978). Here, the plaintiff was lawfully separated from employment under G. L. c. 31, § 20D, negating "any thought that duties will be resumed." 374 Mass. at 260. As we have said, "the legislative scheme [of G. L. c. 41, § 111F] is designed to afford some protection to a disabled officer pending recovery or pending a severance from employment due to factors beyond the officer's personal control, i.e., retirement or pension." *Id.* In these circumstances, where the unchallenged reasons for termination charge illegal conduct as well as breach of duty, we think the plaintiff has forfeited any claim to the continuation of wages which are incident to employment. *Id.* See *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941), and cases cited. To reach

a contrary result would be to adopt a construction of the statute leading to an "unreasonable conclusion," which we need not do "where its language is fairly susceptible to a construction that would lead to a logical and sensible result." *Id.*

> *Judgment of the Superior
> Court affirmed.*