EDWARD J. VAUGHAN vs. AUDITOR OF WATERTOWN & others.[1]

Middlesex.    December 17, 1984. — January 24, 1985.

Present: ARMSTRONG, CUTTER, & PERRETTA, JJ.

*Retirement. Police*, Disability.

The presumption created by G. L. c. 32, § 94, that any impairment of health resulting from hypertension suffered by a permanent member of a police department has occurred in the line of duty, was not applicable so as to permit a police officer to receive leave with pay under G. L. c. 41, § 111F. [245-247]

CIVIL ACTION commenced in the Superior Court Department on October 9, 1979.

The case was heard by *James M. Sweeney*, J., sitting under statutory authority.

*Gary S. Brackett*, Town Counsel, for the defendants.

*Alfred E. Nugent* (*Jeffrey B. Krashin* with him) for the plaintiff.

CUTTER, J. Vaughan, a police officer in Watertown from 1961 until his retirement in May, 1978, became ill in October, 1977, because of hypertension, and was absent from work until his retirement. On December 27, 1977, Vaughan applied to the town retirement board for retirement for accidental disability. On March 30, 1978, a medical panel, see G. L. c. 32, § 6(3), certified to the Watertown retirement board that Vaughan was substantially unable to perform his duties because of hypertension. On May 3, 1978, the board voted that Vaughan be retired (see G. L. c. 32, §§ 7, 94) under G. L. c. 32, effective May 4, 1978.

The town's selectmen on March 5, 1979, approved payment to Vaughan of $3,104.79, under c. 3, § 29(p), of the town by-

---

[1] The selectmen and the town of Watertown.

laws, for unused accumulated sick leave of a person whose employment ends by retirement under the General Laws. On March 15, 1979, the town auditor, see G. L. c. 41, § 56, refused to approve this payment because there was no record showing a "line-of-duty" injury (see G. L. c. 41, § 111F) to Vaughan which would justify treating his absence from work (from October, 1977, to May, 1978) as leave with pay by reason of specific injury rather than as sick leave.

Vaughan filed a complaint in the nature of mandamus to compel payment. The trial judge found the facts, essentially as stated above, and ordered that the requested payment be made to Vaughan for the unused sick leave. He ruled, in effect, that the presumption found in G. L. c. 32, § 94 (sometimes referred to as the "heart law"), and applicable to the *retirement* of a permanent member of a police department, applied also to granting such an employee leave with pay, pursuant to G. L. c. 41, § 111F. Pertinent portions of c. 32, § 94, as appearing in St. 1963, c. 610, and of c. 41, § 111F, as appearing in St. 1964, c. 149, are set forth in the appendix to this opinion.

Chapter 32, § 94, was first enacted by St. 1950, c. 551, which contained the presumption (then with respect only to "uniformed member[s] of a paid fire department") that "any condition of impairment of health caused by hypertension . . . resulting in total or partial disability" had been "suffered in line of duty, unless the contrary be shown by competent evidence." By St. 1951, c. 594, this presumption was extended to permanent members of police departments. At that time (see St. 1945, c. 658, § 1), and continuing to the present (see St. 1982, c. 630, § 18), under c. 32, § 7(1), applications for accidental disability *retirement* could be made by an employee only when occasioned "by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties *at some definite place and at some definite time* . . . without serious and wilful misconduct on his part" (emphasis supplied). Chapter 32, § 94, modified the rigidity of this provision of § 7 (and possibly other provisions relating to *retirement*) by the presumption (hereafter "the § 94 presumption") concerning hypertension. When c. 41, § 111F, was first

enacted by St. 1952, c. 419 (in its title described as relating to "*injured leave* for certain incapacitated police officers and fire fighters," emphasis supplied), there was no reference to the § 94 presumption. The emphasized language of § 94 (as quoted in the appendix, viz., "affecting the non-contributory or contributory system") suggests strongly that the § 94 presumption relates only to *retirement*. See the statement in *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957), that "[t]he opening phrase of § 94 invites litigation." If the § 94 presumption had been intended to apply to c. 41, § 111F, found in a different chapter of the General Laws relating generally to officers and employees of towns (and more particularly to their hours of work, holidays, vacations, and leaves), it would have been natural for the Legislature to have said so.

Although both sections have been in effect in substantially the same form for over thirty years, the Legislature never has expressly extended the § 94 presumption to § 111F. The decisions under § 111F, so far as brought to our attention, have dealt with heart conditions directly only once and then in very different circumstances. See *Thibeault* v. *New Bedford*, 342 Mass. 552, 554-557 (1961), where a policeman, during his probationary period, suffered a heart seizure on a specified, identifiable day, and where c. 32, § 94, was referred to, at 556 n.1, only ambiguously. See also *DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct. 506, 511-516 (1979). An opinion (dated November 21, 1956) of the Attorney General referred to in one brief, Rep. A.G., Pub. Doc. No. 12, at 38 (1956), makes no reference to the effect (if any) of c. 32, § 94, on c. 41, § 111F. *Jones* v. *Wayland*, 374 Mass. 249, 252 (1978), *S.C.*, 380 Mass. 110, 111, 118 & n.12 (1980), dealt with an eye injury to a police officer which occurred at a specific, identifiable time and place. The effect of the § 94 presumption on c. 41, § 111F, was not there considered.

Under such unduly ambiguous statutes, of course, the matter is not free from doubt. On balance, we are of opinion that the trial judge erroneously concluded (where Vaughan could not identify a specific occurrence or series of occurrences in line

of duty as giving rise to his hypertension) that Vaughan was entitled to leave with pay under c. 41, § 111F. Consequently, we hold that, under § 111F, his days of paid absence from duty must be charged to his ordinary sick leave allowance. Any allowance to him under the Watertown by-law for unused sick leave must be only for such sick leave as was not consumed by his period of absence because of hypertension prior to his retirement.

The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion. Costs of appeal are to be divided evenly.

*So ordered.*

APPENDIX.

General Laws c. 32, § 94, as appearing in St. 1963, c. 610, reads in part: "Notwithstanding the provisions of any general or special law to the contrary *affecting the non-contributory or contributory system,* any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a . . . permanent member of a police department . . . shall, if he successfully passed a physical examination on entry into such service . . . be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence" (emphasis supplied).

General Laws c. 41, § 111F, as appearing in St. 1964, c. 149, reads in part: "Whenever a police officer . . . of a . . . town . . . is incapacitated for duty *because of injury sustained in the performance of his duty without fault of his own* . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer . . . has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers . . . in such . . . town . . . determines that such incapacity no longer exists" (emphasis supplied).