PAUL T. BLAIR vs. BOARD OF SELECTMEN OF
BROOKLINE & others.[1]

Suffolk. December 5, 1986. — June 3, 1987.

Present: GRANT, PERRETTA, & KASS, JJ.

*Police,* Compensation, Incapacity, Sick leave. *Municipal Corporations,*
Police. *Words,* "Injury."

A police officer who had, since 1980, suffered from symptoms of hyperten-
sion apparently caused by events which, while stressful, were within
the realm of normal police work, and who, in August 1985, while
participating in an arrest of a larceny suspect, experienced the symptoms
of his condition, later diagnosed by his attending physician as severely
elevated blood pressure brought on by police work, which subsequently
led to his being placed on sick-leave status, was held to have been
injured "in the performance of his duty" under G. L. c. 41, § 111F,
and to be entitled to continued sick-leave compensation. [263-265]

CIVIL ACTION commenced in the Superior Court Department
on October 17, 1985.

The case was heard by *Jeremiah J. Sullivan,* J., sitting under
statutory authority.

*David Lee Turner,* Town Counsel, for the defendants.
*Gerald F. Blair* for the plaintiff.

PERRETTA, J. There is no dispute that the plaintiff, a twelve-
year veteran of the Brookline police force as of the time of
this controversy, has suffered from hypertension since 1980.
On August 23, 1985, while participating in the arrest of a
larceny suspect at a local supermarket, he experienced the
symptoms of his condition (terrible headache, the sensation
that his heart was racing, and the feeling of severe pressure
in his hands, legs, and feet), and he went directly from the
supermarket to his doctor's office. After examining the plaintiff,

[1] The chief of police and the treasurer of Brookline.

the doctor admitted him to a hospital, where he was treated for six days. Upon his discharge from the hospital, the plaintiff did not return to work, and the defendant chief of police placed him on sick-leave status. The plaintiff then brought this action seeking a declaration of his rights under the first paragraph of G. L. c. 41, § 111F, as appearing in St. 1964, c. 149.[2] The defendants claimed that the plaintiff had not suffered an "injury" in the performance of his duties but had succumbed to a disease or progressive physical weakness. The judge concluded that the plaintiff is entitled to payment under § 111F from August 23, 1985, up to such time as he is "retired and/or pensioned or . . . is deemed to have recovered from the incapacity from which he suffers." We agree.

I. *The Facts.*

Our review of the testimonial and documentary evidence shows ample support for the judge's findings of fact, which leave no room for doubt that he accepted the evidence offered by the plaintiff's treating physician of some six years. We, therefore, recite the facts as found by the judge and as relevant to the main issue before us: whether the plaintiff sustained an "injury" in the performance of his duties as that term is used in § 111F.[3]

When the plaintiff was first seen by his physician in October, 1980, she diagnosed him as suffering from hypertension. She has been treating him since that time for that condition, pre-

---

[2] "Whenever a police officer . . . of a . . . town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity."

[3] In their principal brief, which is couched in conclusory terms, the defendants do not dispute the judge's findings and argue that, on the facts found, the plaintiff did not sustain an injury within the comprehension of § 111F. After the plaintiff's brief was filed, the defendants presented a reply brief in which they suggest error in the findings. The plaintiff has objected to any consideration of the reply brief by us. See *Commissioner of Rev.* v. *Plymouth Home Natl. Bank,* 394 Mass. 66, 67 n.3 (1985); *Travenol Labs., Inc.* v. *Zotal, Ltd.,* 394 Mass. 95, 97 (1985); *Kelley* v. *Rossi,* 395 Mass. 659, 665 n.6 (1985). We conclude that the reply brief raises no new issues; rather, it more properly presents and develops the argument stated in the principal brief.

scribing various medications, e.g., Inderal, hydrochlorothiazide, Atenolol, Dyazide, Wytension, and Serax. On numerous occasions in 1984 and 1985 (up to August 23), the plaintiff experienced the previously described symptoms of his condition while in the performance of his duties as a police officer. Although each of the specific events which brought on the symptoms could be characterized either as stressful or confrontational, none can be viewed as outside the realm of normal or routine police work. Although none of the events was of itself inherently dangerous, each exacerbated the plaintiff's condition, causing him to experience pronounced symptoms of acute hypertension.

When the plaintiff was seen by his physician immediately following the event of August 23, his blood pressure was "uncontrolled" and there was blood in his urine. According to his physician, in the case of a person of the plaintiff's age (mid-thirties), suffering from hypertension, the presence of blood in the urine could be indicative of ruptured capillaries in the kidneys. If this were so, it could mean that he also had ruptured capillaries in his brain. The physician testified that, throughout his years of treatment for hypertension, the plaintiff had demonstrated a pattern that, whenever he was away from work, his blood pressure would be within a "more reasonable . . . sometimes very normal range." When his blood pressure was monitored "during time of his working," it was "more elevated."

Based upon various tests that the physician had performed upon the plaintiff, she had ruled out "organic causes" for his "uncontrolled hypertension." It was her medical opinion that "stress has been a very important, provocative feature of . . . [the plaintiff's] pattern of hypertension." His blood pressure can "erratically or randomly become elevated," and he is "at a serious risk" of suffering a "stroke, cardiovascular disease and heart attack." She concluded that the plaintiff is "totally disabled from performing his duties as a police officer."

II. *The Injury.*

In determining whether the plaintiff is entitled to sick-leave pay under § 111F, we are guided by cases decided under the

analogous provisions of G. L. c. 152, § 26. See *Wormstead*
v. *Town Manager of Saugus*, 366 Mass. 659, 663-664 (1975);
*DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct.
506, 511 (1979). These cases instruct that the term "injury"
is to be given a "broad construction." *Pell* v. *New Bedford
Gas & Edison Light Co.*, 325 Mass. 239, 241 (1950). A claim-
ant need not show that the injury was brought about by an
accident. See *Smith's Case*, 307 Mass. 516, 517 (1940). The
disabling condition or "disease must be, or be traceable directly
to, a personal injury peculiar to the employment." *Maggelet's
Case*, 228 Mass. 57, 61 (1917).

The fact that the incidents to which the plaintiff points as
being the cause of his hypertension can be characterized as
normal and routine events in police work does not render his
injury noncompensable under the "wear and tear" doctrine.
"To be compensable, the harm must arise either from a specific
incident or series of incidents at work, or from an identifiable
condition that is not common and necessary to all or a great
many occupations. The injury need not be unique to the trade,
and need not, of course, result from the fault of the employer.
But it must, in the sense we have described, be identified with
the employment" (footnotes omitted), *Zerofski's Case*, 385
Mass. 590, 594-595 (1982). On the facts as found by the judge,
the plaintiff's injury falls within the scope of § 111F. The hurt
here is severely elevated blood pressure brought on by police
work. An injury, for purposes of the statute, need not be
traumatic in origin. "If a condition or incident of work aggra-
vates a preexisting health problem, the employee has suffered
a 'personal injury,' and may recover from the employer for
his entire disability." *Zerofski's Case*, 385 Mass. at 593. See
also *Brightman's Case*, 220 Mass. 17, 20 (1914); *Donlan's
Case*, 317 Mass. 291, 293-294 (1944); *Brzozowski's Case*,
328 Mass. 113, 115-116 (1951).

The defendants also contend that the plaintiff is precluded
from receiving § 111F sick-leave pay by reason of our holding
in *Vaughan* v. *Auditor of Watertown*, 19 Mass. App. Ct. 244
(1985). In that case the officer "could not identify a specific
occurrence or series of occurrences in line of duty as giving rise

to hypertension." *Id.* at 246-247. The trial judge had there allowed sick-leave pay under § 111F by giving the officer the benefit of the statutory presumption set out in G. L. c. 32, § 94, as amended through St. 1971, c. 1012, § 16, the so-called "heart law." That statute reads, in relevant part, that "any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a . . . permanent member of a police department, . . . shall, if he successfully passed a physical examination on entry into such service, . . . be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence." For reasons discussed in *Vaughan, supra,* we concluded that the presumption created by c. 32, § 94, is not applicable to claims for sick-leave pay under c. 41, § 111F.

We agree with the plaintiff that c. 32, § 94, has never been a consideration in this case. There is nothing in § 94 or in *Vaughan, supra,* which suggests, even slightly, that § 111F sick-leave pay is unavailable to an officer whose absence from work is attributable to hypertension sustained in the performance of duty. It is merely the benefit of the § 94 presumption that is unavailable to the officer. Here, however, the plaintiff did not rely upon the statutory presumption in presenting his claim. Rather, he offered evidence which identified specific events in the performance of his duties as giving rise to his hypertension. In concluding that the plaintiff was entitled to sick-leave pay under § 111F, the judge made no mention of c. 32, § 94, but instead expressly relied upon those occurrences identified by the plaintiff and supported by the evidence. We see no error.

III. *Termination of § 111F Benefits.*

On May 17, 1986, the judge amended the judgment pursuant to an order of a single justice of this court for reasons not here pertinent. As amended, the judgment provides for the dollar amount of compensation due the plaintiff for the period between August 23, 1985, up to May 17, 1986, and the method by which his compensation is to be computed from that date up to the time the plaintiff "is retired and/or pensioned or . . . deemed to have recovered."

By way of attachment to their principal brief, the defendants have presented to us what purports to be a letter from the "Brookline Retirement Board" (board) to the plaintiff, dated October 1, 1986, advising him that on June 25, 1986, the board had voted to grant him an accidental disability retirement allowance, "effective midnight, January 20, 1986," and that the board's decision had been approved by the Public Employee Retirement Administration Commissioner (commissioner) on September 16, 1986. On the basis of this letter, the defendants state that, in the event we conclude that the plaintiff is entitled to § 111F payments, we should also conclude that his right to those benefits ended on January 20, 1986.

When the plaintiff filed his brief, he included various documents concerning his retirement. He argues that under G. L. c. 32, § 21(1)(d), his retirement is not effective until it is approved by the commissioner, here September 16, 1986.

The parties never requested leave of this court, while the appeal was pending, to present to the trial judge a motion to amend the judgment or otherwise bring before him the issue of the effective date of the plaintiff's retirement. It does not appear that the documents attached to the parties' briefs were ever presented to the trial judge, and they are not properly before us. See Mass.R.A.P. 8(e), as appearing in 378 Mass. 934 (1979). In the manner and form presented to us, we cannot even determine whether the issue involves a question of law that lends itself to decision without first ascertaining certain facts. We, therefore, leave it to the parties to raise the issue on the remand of this matter for computation of the amount of compensation due the plaintiff.

IV. *Conclusion.*

The plaintiff's request for fees and double costs pursuant to Mass.R.A.P. 25, as amended, 378 Mass. 925 (1979), is denied. The matter is remanded to the Superior Court where the judgment as amended through May 17, 1986, is to be further amended so as to declare the dollar amount of compensation due and owing the plaintiff under G. L. c. 41, § 111F, from August 23, 1985, up to the date of the plaintiff's accidental disability retirement, less any credit due the defendants for

benefits paid to the plaintiff pending their appeal, together with appropriate interest. As so amended, the judgment is affirmed.

*So ordered.*