## Town of Ware *vs.* Town of Hardwick
### (and a companion case[1]).

No. 05-P-1218.

Worcester. April 10, 2006. - September 13, 2006.

Present: Kantrowitz, Doerfer, & Cohen, JJ.

*Practice, Civil,* Case stated, Statement of agreed facts. *Police,* Injury on duty. *Indemnity. Public Employment,* Indemnification of employee.

Where an individual who was simultaneously employed as a full-time fire fighter for one town and a part-time police officer for another town suffered an aneurysm while on duty as a police officer and became disabled, and assigned to his full-time employer his rights against the part-time employer under G. L. c. 32, § 85H, for "injured on duty" benefits, the full-time employer could pursue that claim, where the disabling condition arose without fault of the employee while working on the part-time job [329-331]; further, the employee was entitled to indemnification from his part-time employer under G. L. c. 41, § 100, for medical expenses he incurred as a result of the aneurysm, where there was a causal connection between the medical condition treated and the performance of his job [331-333].

Civil actions commenced in the Superior Court Department on August 28, 1998, and October 5, 1998, respectively.

After consolidation, the cases were heard by *Peter W. Agnes, Jr.,* J.

*Sarah N. Turner* for town of Hardwick.

*David A. Wojcik* for town of Ware.

*John K. McGuire, Jr.,* for Randall Witkos.

Doerfer, J. The town of Ware (Ware), as assignee of Randall Witkos, brought an action to require the town of Hardwick (Hardwick) to pay to Ware statutory "injured on duty" benefits under G. L. c. 32, § 85H, allegedly due to Witkos on account of an aneurysm that disabled him while he was performing his

---

[1]Randall Witkos *vs.* Town of Hardwick.

duties as a part-time police officer for Hardwick. Witkos also sought in an action in his own name to require Hardwick to indemnify him under G. L. c. 41, § 100, for medical bills incurred as a result of the aneurysm. The cases were consolidated for a bench trial on a "case stated" basis in which all of the evidence (which was entirely documentary) was stipulated. Hardwick now appeals from amended judgments entered against it in both actions.

*Standard of review of a case stated.* Where an action was treated as a case stated[2] and the appellate court has all the documents, including the parties' stipulation of the facts, that formed the basis for the judgment, "we decide the questions of law involved unaffected by [the trial judge's] decision." *Tucci* v. *Di-Gregorio*, 358 Mass. 493, 493-494 (1970). We thus review this case de novo. See *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974) ("Because this appeal arises from a decision on a case stated, we deal with it anew, unaffected by any conclusions of law or inferences drawn by the [trial] judge"); *Malonis* v. *Harrington*, 442 Mass. 692, 696 (2004) (resolving the dispute on the case stated record); *Pilch* v. *Ware*, 8 Mass. App. Ct. 779, 780 (1979); *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 429 (1980); *Hickey* v. *Green*, 14 Mass. App. Ct. 671, 671 n.2 (1982). See also Nolan & Henry, Civil Practice § 33.7 (3d ed. 2004) ("It is now provided that upon a case stated by agreement of the parties for the decision of the court in any action, any court before which the case may come, either in the first instance or upon review, is at liberty to draw from the facts and documents stated in the case any inferences of fact which might have been drawn therefrom at a trial, unless the parties expressly agree that no inferences shall be drawn").

*Background.* Witkos was both a full-time fire fighter for Ware and a part-time police officer for Hardwick. He had worked as a full-time fire fighter for Ware for many years. Witkos worked the entire day of August 29, 1996, at his Ware fire fighter job.

---

[2]The parties presented below an agreement setting forth "all the material ultimate facts on which the rights of the parties are to be determined by the law." *Pequod Realty Corp.* v. *Jeffries*, 314 Mass. 713, 715 (1943), quoting from *Frati* v. *Jannini*, 226 Mass. 430, 431 (1917). The label is not the determinative factor in treating an action as a "case stated," but rather the court looks to the substance of the agreement. *Id.* at 432.

Near the end of his shift, before leaving for his Hardwick police job, he felt weak, tired, and run down. After finishing his fire fighter shift, he was called to assist in a police action in Hardwick that involved carrying contraband marijuana plants out of a field, over a stone wall, and onto a truck. He carried bundles of marijuana from the field to the truck three or four times. While performing this task, Witkos experienced disabling pain, collapsed, and was taken to a hospital where he was diagnosed with a dissecting aortic aneurysm. He incurred medical and hospital bills in the amount of $136,343.80 in connection with the treatment of the aneurysm.

Initially Ware began paying Witkos paid leave benefits under G. L. c. 41, § 111F.[3] See *Jones* v. *Wayland*, 380 Mass. 110, 118 (1980). Ware subsequently terminated these payments, taking the position that they were made in error because his injury was sustained while working on his Hardwick job, not on his Ware job. As a result, Witkos filed a grievance under a collective bargaining agreement with Ware. Ware and Witkos entered into a written agreement in settlement of that grievance, pursuant to which Witkos released his claims against Ware and assigned to Ware his rights against Hardwick under G. L. c. 32, § 85H, and G. L. c. 41, § 111F.[4] Witkos further received $19,278.73 in sick leave benefits from Ware and was allowed to keep the paid leave benefits (in the amount of $24,054.44) already received from Ware. The settlement agreement provided that Ware would keep amounts it recovered on the assigned claims, up to the total amount of the paid leave benefits and sick leave benefits it had paid to Witkos (i.e., $43,333.17). Any excess amounts recovered would belong to Witkos. Ware, to recoup its outlays, filed its action against Hardwick asserting Witkos's assigned claims.[5]

Witkos was totally disabled by the aneurysm and never

---

[3] "Whenever a police officer or fire fighter of a . . . town . . . is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity . . . ." G. L. c. 41, § 111F, as appearing in St. 1964, c. 149.

[4] Hardwick admitted such in its answer to Ware's complaint, clarifying any ambiguity in the settlement agreement about the scope of the assignment.

[5] Although Ware's complaint refers to benefits allegedly due to Witkos from

worked again on either job. As part of the settlement of the grievance, Ware also agreed not to oppose his application for accidental disability retirement benefits from the Hampshire County retirement board under G. L. c. 32, § 7.[6] Witkos was successful in obtaining a disability retirement pension on October 22, 1997, at thirty-one years of age. That pension was granted from Hampshire County in connection with his full-time job as a Ware fire fighter under the so-called "heart law," G. L. c. 32, § 94.[7] The heart law creates a presumption that a disability of a full-time fire fighter arising out of a heart condition is causally related to his job, without the need to prove further any such causal connection. See *Blair* v. *Selectmen of Brookline*, 24 Mass. App. Ct. 261, 265 (1987); *Lisbon* v. *Contributory Retirement Appeal Board*, 41 Mass. App. Ct. 246, 249 & n.5 (1996).

Meanwhile, Blue Cross Blue Shield of Massachusetts, which had paid for Witkos's hospitalization and medical care expenses, retracted its coverage under the terms of its health insurance policy covering Witkos, on the ground that his injuries were work-related.[8] Consequently Witkos became liable for these expenses, a liability for which he filed his action seeking indemnification from Hardwick under G. L. c. 41, § 100.

---

Hardwick under G. L. c. 41, § 111F, for continuation of his Hardwick wages while he was out of work due to the injury suffered while on the Hardwick job, that claim was not pursued at trial or in this appeal, and we do not address it.

[6]General Laws c. 32, § 7(1), as amended by St. 1996, c. 306, § 14, provides accidental disability retirement for a qualified member in service "who is unable to perform the essential duties of his job and that such inability is likely to be permanent before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time on or after the date of his becoming a member . . . , without serious and willful misconduct on his part, upon his written application on a prescribed form filed with the [retirement] board and his respective employer . . . ."

[7]In relevant part, G. L. c. 32, § 94, as amended through St. 1991, c. 552, § 26, provides that "any condition of impairment of health caused by . . . heart disease resulting in total or partial disability . . . to a uniformed member of a paid fire department or permanent member of a police department . . . shall . . . . be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence."

[8]Witkos's claim against Blue Cross Blue Shield of Massachusetts is not before us.

*Benefits for a part-time police officer.* A part-time police officer who is disabled while working on his part-time job and who is thereby unable to work at his "regular" job is entitled to statutory "injured on duty" benefits under G. L. c. 32, § 85H, the relevant provisions of which state:

> "Whenever a call fire fighter or any member of a volunteer fire company in a town . . . or reserve or special or intermittent police officer of a town, or a reserve police officer or reserve or call fire fighter of a city is disabled because of injury or incapacity sustained in the performance of his duty without fault of his own, and is thereby unable to perform the usual duties of his regular occupation at the time such injury or incapacity was incurred, he shall receive from the city or town for the period of such injury or incapacity the amount of compensation payable to a permanent member of the police . . . force thereof . . . for the first year of service therein . . . provided, that no such compensation shall be payable for any period after such police officer . . . has been retired or pensioned in accordance with law . . . ."

G. L. c. 32, § 85H, as amended through St. 1970, c. 382, § 1.[9] See *Politano* v. *Selectmen of Nahant*, 12 Mass. App. Ct. 738, 743 (1981). The "injured on duty" benefits paid to the part-time police officer under G. L. c. 32, § 85H, are designed to compensate the officer for the loss of income from a regular occupation. *Politano* v. *Selectmen of Nahant, supra*. The amount of these benefits, payable by the part-time employer, is equivalent to the amount of compensation that would be due to a first-year permanent member of the police department for the period of incapacity. This benefit ends upon retirement. See *id.* at 744.

It is not necessary to a temporary compensation claim under G. L. c. 32, § 85H, to establish that the disability "sustained in the performance of . . . duty" was caused specifically by the

---

[9]General Laws c. 32, § 85H, contains two types of "injured on duty" benefits: a permanent retirement benefit and temporary compensation related to the inability to perform a regular occupation. *Jones* v. *Wayland*, 380 Mass. at 112. At issue here are the temporary compensation benefits for the period prior to Witkos obtaining accidental disability retirement benefits from Hampshire County.

duty being performed. Cf. *Wormstead* v. *Town Manager of Saugus*, 366 Mass. 659, 662-663 (1975) (under G. L. c. 41, § 111F [which possesses operative language similar to that of G. L. c. 32, § 85H], proof that the injury specifically resulted from the work is not necessary). It is sufficient that the disabling condition arose without fault of the part-time employee while working on the part-time job. See G. L. c. 32, § 85H. Thus, under the unique circumstances of this case, it is of no consequence to this claim, contrary to the argument of Hardwick, whether Witkos's aneurysm may have been causally related in whole or in part to his job as a full-time Ware fire fighter.

Hardwick, citing *Jones* v. *Wayland*, 380 Mass. at 120, argues that Witkos should not be able to collect benefits for his Ware fire fighter job from both Ware (under G. L. c. 41, § 111F) and from Hardwick (under G. L. c. 32, § 85H). But unlike the situation in that case, this appeal does not involve the potential for overlapping benefits under § 85H and § 111F as related to an employee "who had lost only one job." *Jones* v. *Wayland*, *supra*.[10] Here Witkos would receive nothing more than he is entitled to under G. L. c. 32, § 85H, and will not be doubly compensated for his inability to work as a full-time Ware fire fighter. An amount equal to that which Ware has already paid to him (both in paid leave benefits and sick leave benefits) would be retained by Ware. Although any excess recovery (there is none here) would have gone to Witkos, there would be no more

---

[10]Our decision should not be read to suggest that Witkos in fact had enforceable rights under both § 111F (against Ware) and § 85H (against Hardwick) to compensation for his disablement from his Ware fire fighter job. Because Witkos's grievance seeking § 111F benefits from Ware was the subject of legal settlement and release, that claim was never properly litigated. It is not before us, we are not in a position to opine on its merits, and we are thus not confronted with the potential for "double recovery" that troubled the court in *Jones* v. *Wayland*, 380 Mass. at 120.

Moreover, we read the *Jones* decision simply as holding that, to avoid a "double recovery" not intended by the Legislature, the special police job (or other enumerated police or fire fighter job) being relied on to invoke § 85H in the first instance cannot also count as the § 85H claimant's "regular occupation" for purposes of compensation. Although dictum in the *Jones* opinion suggests categorically that " 'regular occupation' cannot be police or fire duty," *ibid.*, this language was not penned with the case in mind of a full-time public safety officer for one town suffering injury in the course of his part-time public safety work for another town.

compensation to Witkos than the statute provides. This benefit is not limited by the amount he would have received on his primary job (so long as he had a primary job); it is measured by reference to what a full-time police officer in Hardwick earns. Compare *Murphy* v. *Dover*, 35 Mass. App. Ct. 904, 904-905 (1993) (a part-time call ambulance worker and police matron was not entitled to benefits, as her full-time work as a housewife was not considered a "regular occupation" because it did not constitute "a substantial source of income").

Finally, there is no requirement, as argued by Hardwick, that Witkos or someone on his behalf make a formal claim for benefits under G. L. c. 32, § 85H, before commencing an action to enforce it. See *Jones* v. *Wayland*, 380 Mass. at 117.

*Reimbursement for medical bills.* We turn next to the claims of Witkos against Hardwick for indemnification for his medical bills under G. L. c. 41, § 100. This statute does require some causal connection between the medical condition treated and the performance of his job for Hardwick. See G. L. c. 41, § 100 (indemnification for reasonable medical expenses "incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own").[11]

Contrary to the arguments of Hardwick, there is evidence in the record to support Witkos's claim of a causal connection between the acute dissection of his aortic aneurysm and his activity as a part-time police officer for Hardwick. Immediately

---

[11]General Laws c. 41, § 100, as amended through St. 1970, c. 27, provides in pertinent part that, "Upon application by a fire fighter or police officer of a city, town or fire or water district, . . . the board or officer of such city, town or district authorized to appoint fire fighters or police officers, as the case may be, shall determine whether it is appropriate under all the circumstances for such city, town or district to indemnify such fire fighter or police officer for his reasonable hospital, medical, surgical, chiropractic, nursing, pharmaceutical, prosthetic and related expenses and reasonable charges for chiropody (podiatry) incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own." Furthermore, the statute "specifically provides for a petition to the Superior Court when an application for reimbursement is denied or ignored." *O'Donovan* v. *Somerville*, 41 Mass. App. Ct. 917, 918 (1996).

before experiencing intense pain and collapsing, Witkos had been carrying bales of marijuana on his shoulder from a field, over a stone fence, and onto a truck. He made this trek three or four times in the course of approximately one-half hour. Additionally, a treating surgeon at Massachusetts General Hospital stated in a letter that "[t]here is no question that the acute event of aortic dissection which was marked by the onset of very severe symptomatology occurred while at work and was related to the straining that he was doing at that time." It is beyond dispute that this acute episode occurred while "acting in the performance and within the scope of his duty without fault of his own." G. L. c. 41, § 100.

Witkos is not prevented, under the doctrine of issue preclusion, from claiming a causal connection between his police job and the disabling condition by the fact that he successfully obtained a disability pension from the Hampshire County board of retirement on the ground that he was disabled as a result of his Ware job as a fire fighter. This retirement outcome followed Ware's agreement in the grievance settlement not to oppose Witkos's application for disability retirement, which in effect allowed the causation presumption contained in the heart law, G. L. c. 32, § 94, to be conclusive.[12] The causation question thus was not actually litigated, an indispensable prerequisite of the issue preclusion doctrine. See *Kobrin* v. *Board of Registration in Medicine*, 444 Mass. 837, 844 (2005).

Furthermore, the fact that such a condition may be causally related to Witkos's job as a fire fighter does not preclude the possibility that it is also causally related to the performance of his job as a part-time police officer. A disability under the heart law is based on the presumption that heart disease is a long-term illness that can be exacerbated by the stress of working as a fire fighter. A final stressful incident which occurs while the fire fighter is working on some other job may be the immediate precipitating disabling event in a long chain of causation that

[12]Under the heart law, the Legislature has provided a statutory presumption that a disabling heart condition developed by a fire fighter is causally related to the job as a fire fighter. We have interpreted the heart law presumption as relating only to retirement, see *Vaughan* v. *Auditor of Watertown*, 19 Mass. App. Ct. 244, 246 (1985), and thus it has no application to medical expense indemnification under G. L. c. 41, § 100.

included deterioration due to service as a fire fighter. In this sense the disability can logically and factually be related to both jobs.[13]

Nor is there any preclusive effect to the proceeding before the Hampshire County retirement board for accidental disability retirement benefits under the heart law and based upon the risk that Witkos might suffer another acute aortic episode in the future. Here Witkos sought indemnification for medical expenses under G. L. c. 41, § 100, for treatment relating to the acute event of aortic dissection that he suffered while on duty as a police officer. He is not prevented from making a claim for medical expenses.

There is support for the argument that Witkos made some application for these benefits. See G. L. c. 41, § 100. No particular form of application is required by statute. See *ibid.* The record shows that Witkos did enough to bring this claim to the attention of Hardwick to satisfy the statutory condition. Early in the process, Witkos discussed his medical bills with Hardwick's police chief and Ware's fire chief. The Ware fire chief had requested, on Witkos's behalf, that Hardwick make arrangements to pay all the medical bills associated with his treatment. In addition, Witkos's attorney submitted detailed medical bills to counsel for Hardwick. See *O'Donovan* v. *Somerville*, 41 Mass. App. Ct. at 917, 918 (1996) (employee forwarded his medical bills to the chief of the fire department).

We therefore agree with the trial judge's conclusion that Witkos is entitled to indemnification from Hardwick for his relevant medical expenses.[14]

*Conclusion.* The stipulated facts and admissions in the pleadings show that (1) Witkos is disabled; (2) his incapacity was

---

[13]We do not hereby suggest that such a causation scenario, if proved in a particular case, would entitle a person to benefits under both G. L. c. 32, § 85H, and G. L. c. 41, § 111F, for disablement from the person's primary public safety occupation. As we explained in note 10, *supra*, there is no § 111F claim against Ware before us, and thus we express no opinion on how the two statutes interact in a dual causation case.

[14]Hardwick has not asserted that it would have exercised whatever discretion it may have under G. L. c. 41, § 100 (see note 11, *supra*, for relevant text), to decide that reimbursement is not "appropriate under . . . the circumstances." We deem that issue waived and express no opinion thereon.

sustained while he was in the performance of his duties as a Hardwick special police officer, without his fault; and (3) as a result, he is unable to perform the usual duties of his regular occupation as a full-time fire fighter for the town of Ware. Both the amended judgment in the Ware action[15] and the second amended judgment in Witkos's action are affirmed.

*So ordered.*

---

[15]The amended judgment in the Ware action entered in the amount of $31,071.64, with interest of $5,512.61 calculated from the date Ware filed its complaint on October 5, 1998. The trial judge did not err by adding interest from the date of the commencement of Ware's action, October 5, 1998. See G. L. c. 231, § 6C.